IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMIE JAMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-4417 |
| | § | |
| METROPOLITAN TRANSIT AUTHORITY | § | |
| OF HARRIS COUNTY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this employment-discrimination suit, Tommie James sued his former employer, the Metropolitan Transit Authority of Harris County ("METRO"), because of racial discrimination and retaliation. These allegations arise from James's interactions with his Mexican-American supervisor. (Docket Entry No. 1). METRO moved for summary judgment, (Docket Entry No. 11); James responded, (Docket Entry No. 14); and METRO replied, (Docket Entry No. 17).

Based on the complaint, the motion and accompanying briefing, the record, and the relevant law, this court grants METRO's motion for summary judgment. Final judgment is entered by separate order. The reasons are explained below.

**I.   Background**

METRO provides public transportation service in Harris County, Texas. METRO hired James on January 9, 1993 as a minibus operator. (Docket Entry No. 11, Ex. 1, James Dep., at 24–25). METRO promoted him to a bus operator in October 1994. (*Id.* at 25–26). METRO promoted him again to a bus "starter" in March 2008. (*Id.* at 26). He was a starter until METRO terminated his employment in December 2010.

METRO has a written policy stating that acts or threats of physical violence, including intimidation, harassment, and/or coercion that involve or affect its employees, will not be tolerated. (Docket Entry No. 11, Ex. 2, METRO Workplace Violence Guideline). This policy applies to acts or threats toward METRO employees, whether they are at a METRO facility or not. (*Id.*)

In December 2010, James and Zandra Merritt, another bus driver, both worked at METRO's West Bus Operating Facility. (Docket Entry No. 11, Ex. 1, at 17–18). Merritt and James had been in a sexual relationship, but that relationship had ended by December 2010. (*Id.* at 19, 48).

On December 4, 2010, James and Merritt were at the same nightclub. (*Id.* at 50). A coworker, Vernon Barmore, was also at the nightclub. (*Id.* at 16; Docket Entry No. 11, Ex. 3). James appeared to follow Merritt and Barmore throughout the night. (Docket Entry No. 11, Ex. 3). Barmore escorted Merritt to her car. As Merritt got into her car, James ran toward her and punched her car. (*Id.*)

Merritt drove to METRO's facility to begin her work shift. When she arrived, however, she was too upset to work. METRO approved leave for that shift. (*Id.*)

A few days later, Barmore and James got into a physical fight over Merritt. (Docket Entry No. 11, Ex. 1, at 16, 18). After the fight, James drove to Merritt's home. She was not there. (*Id.* at 74–75). James left Merritt a series of telephone messages that included the following statements:

- "I want to whoop yo' ass. I say I hope you rot in hell";
- "Fuck you; fuck him";
- "I hope yo' black ass rot in hell. I hope you rot so goddamn deep the ground won't even accept yo — calm yo soul, girl";
- "I'll put a fucking slug in her ass and fuck her and ship her ass back to New Orleans";

- "Fuck you and the horse you rode in on";

- "It's bothering my pride that you played me.  But I hope yo' black ass rot in hell";

- "I say I'm a run your black ass back to New Orleans.  I say I'm a ride your ass to the day you die";

- "I'm a find you.  I'm a find you, and I'm gone to find you.  I'm gone run yo' black ass straight back to New Orleans.  I'm gone find you";

- "[B]itch, you could've told me, motherfucker";

- "All those times you wanted to kill yourself, I wish you would have".

(Docket Entry No. 11, Ex. 4, voicemail transcriptions).

Merritt reported these messages to her supervisor, Rudy Becerra, on December 7, 2010. Becerra was also James's supervisor.  Merritt reported the messages because she felt physically and emotionally threatened.  (Docket Entry No. 11, Ex. 3).  Becerra followed METRO procedure by placing James on investigatory suspension.  (Docket Entry No. 11, Ex. 5, Letter from METRO to James dated Dec. 7, 2010).  After METRO investigators listened to James's voicemail messages to Merritt, METRO terminated James's employment on December 17, 2010.  (Docket Entry No. 11, Ex. 6, Disciplinary Action Report).  METRO hired James Jordan, an African-American, as James's replacement.  (Docket Entry No. 11, Ex. 7, Starter Job Assignments; Ex. 8, New Employment Information for James Jordan).

During James's employment with METRO, he had two disciplinary actions before the one that led to his discharge.  In the second action, Becerra suspended James on May 21, 2010 for failing to follow instructions.  James filed a grievance with his union.  The grievance was resolved in his favor.  METRO overturned the suspension several months later.  (Docket Entry No. 14, Ex. 1, Becerra Dep., at 20–21).

3

James filed this § 1983 lawsuit in December 2011. He alleged that he was treated differently than other METRO employees who were not African-American because he was fired for fighting with another employee, while a Hispanic METRO employee who also worked for Becerra had fought in July 2011 but was suspended rather than fired. (Docket Entry No. 1, ¶¶ 17–19). James also alleged that METRO retaliated against him because he had filed the grievance against Becerra. (*Id.*, ¶ 20).

METRO moved for summary judgment. (Docket Entry No. 11). METRO argued that James's discrimination claim failed because METRO replaced James with an African-American employee. (*Id.*, ¶ 21). METRO also argued that James's retaliation claim failed as a matter of law. The claim was based on an internal complaint filed over a May 2010 suspension, not on James's December 2010 suspension. This May suspension, and the challenge to it, were unrelated to the incident James was fired for and unrelated to activity protected under Title VII. (*Id.*, ¶ 9).

James responded by arguing that "a Mexican-American employee was given preferential treatment over him." (Docket Entry No. 14, ¶ 26). James argued that a Mexican-American employee supervised by Becerra, Enrique Monroy, was disciplined for making a "veiled threat" toward another METRO employee, Rubio Pedraza. (*Id.*, ¶¶ 16–17, 32 (citing Docket Entry No. 14, Ex. 1, at 43)). When Becerra investigated the complaint about Monroy, however, he did not call the police or suspend Monroy immediately, which were his responses to Merritt's complaint against James. Becerra suspended Monroy for only five days, while James was fired. (*Id.*, ¶¶ 33–35 (citing Docket Entry No. 14, Ex. 1, at 43–44)).

As to the retaliation claim, James argued that he "engaged in an activity protected by Title VII, when he filed his original grievance on May 21, 2010 related to disciplinary action taken against him by Rudy Becerra, his superintendent, who was Mexican-American." (*Id.*, ¶ 41).

4

The parties' arguments and responses are addressed below in light of the legal standards.

## II. The Summary-Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.    Analysis

### A.    The Discrimination Claim

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (internal quotation marks and citations omitted). Intentional discrimination can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). James presents no direct evidence of discrimination. His claim is analyzed under the circumstantial-evidence framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A Title VII plaintiff carries the initial burden of establishing a prima facie case of intentional discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802. To state a prima facie case, the plaintiff must show that he (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, show that others similarly situated were treated more favorably. *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 236–37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). The burden then shifts to the employer to articulate

a legitimate, nondiscriminatory reason for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the employer sustains its burden, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Here, the first three prongs are undisputed. James is African–American, a member of a protected class. No one disputes that James was qualified for his position as a starter. Termination or discharge is an adverse employment action, 42 U.S.C. § 2000e–2(a)(1), as are "demotions, refusals to hire, refusals to promote, and reprimands," *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). Because James can establish at least one adverse employment action — job termination — he satisfies the third element of the prima facie case.

For the fourth prong, James must show either that he was replaced by someone outside his protected class or that similarly situated persons outside of his protected class were treated more favorably. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When METRO terminated James's employment as a starter, METRO hired James Jordan as James's replacement. (Docket Entry No. 11, Ex. 7). Jordan is African-American. (Docket Entry No. 11, Ex. 8). James fails to raise a fact dispute as to whether he was replaced by a person outside his protected class.

James asserts that he would have been disciplined less severely if he had been Mexican-American, like his supervisor, Becerra. James argues that a Mexican-American employee who Becerra supervised was in fact disciplined less severely than he was for threatening a coworker.

7

James presented the discipline given to Enrique Monroy as evidence of a similarly situated employee who was treated less harshly for similar misconduct. "Similarly situated" employees are employees who are treated more favorably in "nearly identical" circumstances and must fall outside the plaintiff's protective class. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005). The misconduct a plaintiff was discharged for must be nearly identical to that engaged in by an employee who the company retained. *Smith v. Wal–Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990).

The summary-judgment evidence shows that Monroy's misconduct is not nearly identical to James's. Becerra issued Monroy a five-day suspension for making a threatening statement to a fellow employee. The threatening statement was Monroy telling Rubio Pedraza that "you will be sorry." (Docket Entry No. 14, Ex. 1, at 43). Becerra understood the context of the statement to mean that Monroy was going to take legal action against Pedraza. (*Id.* at 44). Becerra disciplined Monroy by suspending him rather than firing him because the statement "wasn't a threat of doing bodily harm." (*Id.* at 43). James, by contrast, made numerous sexually explicit and violent statements, including threats of serious bodily harm to Merritt and Barmore. (*See* Docket Entry No. 11, Ex. 4). James's conduct is not comparable to Monroy's. As a matter of law, James has not established the fourth element of a prima facie case of intentional race discrimination.

Without any basis for comparison to another employee, James is left with only his subjective belief that he would have been treated differently if not for his race. A broad, generalized statement of less-favorable treatment is insufficient to create a fact dispute as to disparate treatment or discrimination. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) ("Without testimony of the circumstances, or without examples of blacks who were scrutinized while similarly-situated whites were not, a broad, generalized statement that black employees were

'watched' more closely than whites is incompetent to establish a pattern of discrimination."). No matter how genuinely held, a plaintiff's subjective belief that he suffered discrimination, without supporting evidence, is insufficient to create a triable fact dispute. *See, e.g.*, *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[Waggoner] alleges that Hamilton and Phillips not only knew the allegations were false, but that in fact they fabricated them for the purpose of discriminating against Waggoner because of his age. He fails, however, to produce any evidence that supports his conclusionary [*sic*] allegations.").

Even if James had made a prima facie showing of race discrimination, summary judgment for METRO is still proper. METRO has proffered a legitimate, nondiscriminatory reason for terminating James's employment: discipline for a workplace threat that violated an established antiviolence policy. James argued that the threats were not actually made at the workplace. (Docket Entry No. 14, ¶ 4). But METRO's antiviolence policy explicitly states that it has zero tolerance for threats of violence toward or harassment of METRO employees, whether at METRO facilities or elsewhere. (Docket Entry No. 11, Ex. 2). The threats in this case were all directed toward other METRO employees.

A Title VII plaintiff can show pretext either by evidence of disparate treatment or by showing that the employer's explanation of the adverse employment action is false or unworthy of credence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). James has neither identified nor presented evidence that METRO's stated reason for terminating his job was false or unworthy of credence. No evidence disputes METRO's assertion that James's conduct violated METRO's antiviolence policy and warranted termination. Similarly, James has not identified or presented evidence controverting the reasons METRO gave for why James was disciplined more harshly than Monroy. James has not

9

identified or produced any evidence to dispute METRO's assessment that Monroy's behavior warranted suspension, whereas James's merited termination.

James has not raised a factual dispute that race was a motivating factor in his job termination. Nor has he shown that he suffered disparate treatment from those outside his protected class. He offers no support other than his subjective belief that he would have been treated differently if he were Hispanic. METRO is entitled to summary judgment.

### B.     The Retaliation Claim

"To present a prima facie case of retaliation under . . . Title VII . . . a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Complaining to supervisors about racial discrimination or harassment is a protected activity. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) ("Under Title VII, an employee has engaged in protected activity if he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" (emphasis omitted) (quoting 42 U.S.C. § 2000e–3(a))); *Carrera v. Commercial Coating Servs. Int'l*, 422 F. App'x 334, 339 (5th Cir. 2011). To survive summary judgment on the retaliation claim, James must raise a genuine fact dispute material to determining that the defendant unlawfully terminated his employment as retaliation for complaining about racial discrimination.

James alleged that Becerra retaliated for a union grievance James filed against him in May 2010. (Docket Entry No. 11, Ex. 1, at 89). Becerra had disciplined James for violating his orders and wrongfully processing certain paperwork for bus routes. James filed a grievance with the union

on the basis that he had not disobeyed orders. James's suspension was overturned. (*Id.* at 101). The union grievance was unrelated to protected activity under Title VII, which prohibits retaliation against a plaintiff because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e–3(a). The summary-judgment evidence shows that the basis of the union grievance had nothing to do with James's race, color, religion, sex, or national origin. The union grievance was about James's job performance. James fails to make a prima facie showing of retaliation and his claim fails as a matter of law. METRO is entitled to summary judgment.

**IV.     Conclusion**

METRO's motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on February 21, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge